23-710 Baines v. Nature's Bounty Michael Braun will hear from first, and you've reserved three minutes for rebuttal. You may proceed when you're ready. Good morning, Your Honors. May it please the Court, Michael Braun on behalf of plaintiffs, appellants, Masha Baines, and Nancy Froning. This is not a complicated matter, but it is an important one, Your Honors. It's one in which there's a manufacturer that makes a synthetic omega-3, and the simple question is, can they fairly and honestly call it fish oil? We contend that it would be deceptive to do so, and they absolutely cannot. Despite providing the lower court with an enormous amount of compendial authority, scientific evidence, and an explanation in detail of the various processes involved, the lower court ruled not only that a synthetic omega-3 may be called fish oil, but it must be called fish oil, and that includes all the omega-3s, synthetic or otherwise, on the market. This defies common sense, and it's the genesis of the appeal. We feel that the court made this error on three predicate errors underneath. One, the transesterification process, which converts. I just want to make sure, so you're saying the logic of the preemption conclusion is that this product's common name is fish oil, and therefore must be called fish oil under federal law, is that the? The lower court's conclusion, that was the only way this matter could be preempted, because if the common and usual name is not fish oil, then there's no express preemption issue. And then in terms of implied preemption, under a Buckman analysis, we again survive, because there's a predicate FDCA violation, because the common and usual name is not fish oil, and we have state causes of action, both in New York and in California, which stand on their own to prevent preemption. Counsel, look. Yes, Your Honor. I'm not going to deal with preemption, because you have. Your Honor, my apologies. I can't quite hear you. I think where you were sitting before, Judge Calabresi was coming in well. Can you hear me now? Yes. Yes, Your Honor. Let me just say I'm inclined to agree with you on preemption, because you do have different statements, WHO and European Union, as to what something is and what something is not. And in order to have preemption, I think you have to have very clear federal statement, federal law. My problem is I don't see how this is misleading. And I don't see how it's misleading, or at least on your preview, because you haven't brought in enough evidence that people have sense that these are the only ones. Could you ‑‑ I'm sorry, Judge Calabresi, you got lost. We lost you for a second there. You haven't brought in evidence that? That there are significant people who recognize the difference between the two and would be used. There's language in some reporters, and which both Judge Gerst and Judge Nathan were, as to what is needed. Now, there are some people who do know the difference. But the people who know the difference are also sophisticated enough so that they can read on the label that this is not squeezed pitch oil, but the extract. That's my problem. My problem goes to whether you have alleged that this is misleading under either New York or California law. Well, thank you for the question, Your Honor. And to answer this as succinctly as possible, a couple points. Number one, I think we certainly have alleged it. However, this is a motion to dismiss. It's not based on full evidence and a summary judgment in which we plan to put in survey data. We plan to call experts, and we plan to prove this case. However, I'll even back up one step, Your Honor, just in terms of two things that you mentioned, and perhaps it dovetails from the lower court as well. And that is, one, a matter of common sense. If you go to any Duane Reade, if you go to any CVS, you will go to the shelves, and you will see what the common person sees, what the reasonable consumer sees. And that is an array of fish oil and, in a separate section, an array of omega-3. And within that, you're going to see DHA and EPA, and you're going to see a full range of things that people can look at and people find material. It wouldn't be on those store shelves in that way if it wasn't material. You know, and the other thing, Your Honor, if you look at all the expert compendial sources, this is how they trade this information amongst each other. It's omega at the Lester's. It's concentrates. It's different forms. And I agree with Your Honor in terms of- But they also sometimes call it fish oil. When it's real fish oil, just like Nature's Bounty does. Nature's Bounty, if you look at the complaint, they have two other fish oils that they call fish oil. The only difference is really one is 1,000 milligrams, one's 1,200 milligrams, one's 1,400. They call it the same thing. We submitted scientific evidence. We took mass spectrographs of these products to demonstrate that this is not fish oil. There is a USP standard for the average consumer shopping to say, look, this is fish oil. Does it matter that scientific two things may be in some deep sense different if to the average consumer the difference is not significant? Your Honor, respectfully, I disagree. If I go into a store and I look at a bottle and it says fish oil and they're emblazoned on it, it's a US Pharmacopeia logo that says fish oil, and I've given you proof that demonstrates uncontrovertibly it is not fish oil. It is not consistent with the USP logo that is on that label. I don't see how a reasonable consumer wouldn't be deceived. It is on that label because reasonable consumers deem that information important. And there's nothing more important than the statement of identity. And fish oil is not an omega-3, and it's certainly not a synthetic omega-3. I see my time is up, Your Honors. I've reserved time for rebuttal, so I'll take the time to have that. Yes, you have that. Thank you. Thank you. Mr. Delgado. Good morning. May it please the Court. William Delgado on behalf of Defendants Appellees. Your Honors, let me start with a line from Appellant's opening brief. Everything is processed. And, of course, that makes sense when you're talking about a product that starts as oil squeezed from a fish and winds up on a shelf in a grocery store in a pill form. That has to be processed. And here, the product was processed in a way that maximizes the omega-3 fatty acids, the part of the fish oil that provides the health benefits to the consumer and eliminates impurities like mercury, which is toxic to human beings. It is labeled as fish oil, and the product label specifically says that those omega-3s are as ethyl esters. So I guess it's a philosophical question. More than anything, at what point does something become something else? So if it's changed at a molecular level. Do you have any other examples? It seems to me that processing may be different than changing at a molecular level. Any other examples from cases on this question that say, well, it's still the thing that it started out with, though it changed at a molecular level? So I can give you the Broad v. Sioux honey case. There, the product was depollinated honey. So California had a law that says that honey has to have pollen in it for it to be called honey. The product there had been processed to take the pollen out, and the question was whether or not honey that had been processed in that way is still honey. And the court, both the district court and the Ninth Circuit that later affirmed, conclude that honey is still honey, notwithstanding that processing. Separately, this is not a case, but to answer this, to answer your question, or attempt to answer your question through the use of this word synthetic, when you think about synthetic, what that term means to the reasonable consumer, think about synthetic leather. Synthetic leather is created in a way that does not actually have any part of the cow, of a cow. That's genuine leather. The synthetic aspect of synthetic leather is that it doesn't have any part of the original, natural thing that it's trying to imitate. Again, with respect to leather, it's cow. Here, the product at issue starts as fish oil. The DHA, the EPA, that comes from crude fish oil. The only difference is that it's in a slightly different molecular composition in the product. Counsel, there are some places that don't agree with that. Just now in Italy, a law is being passed which says that you cannot call it meat. It is taken from the cells of animals and made into hamburgers or whatever, and you can only call it meat if it actually comes from the animal, from killing the animal. Now, you know, it all comes from the animal, and yet you have a whole country voting to say that the two things are different. So it may well be that people think it's different. My question is, do people think that this is different? There's certainly nothing in the complaint, and certainly the district court not just looked at the complaint, but looked also at the 40-plus sources cited in the complaint and correctly concluded that there is nothing to lead to the conclusion that the reasonable consumer sees the word fish oil on a label and believes that to mean fish oil where the DHA and the EPA molecules are still on the triglyceride backbone. That runs counter to the studies and to common sense. The reasonable consumer simply does not know enough about the fish oil processing world to have that understanding, and as the district court pointed out. Why isn't that a factual question? I'm sorry, Your Honor? Why isn't that a factual question? Why isn't that a surveys and experts and the like? Because as this court and other district courts have said, there are certain cases that are so fanciful that we don't need to go beyond the motion to dismiss stage. They are just so out of bounds in terms of their plausibility that they can end at the pleading stage, and this is one of those cases. And what I was about to point out is the fact that the label. I'm sorry, Judge? denied plaintiffs a move to amend the complaint. Couldn't an amendment be made that asserted that there are people deficient of the sort that we can go out and find the numbers? That is, I'm talking about stating that the amendment, the denied amendment, was done. No, Your Honor. The amendment would have to be that a significant, the amendment would have to lead to the conclusion that a significant portion of the consuming public sees the word fish oil and understands that to mean and only mean DPA and EHA in its triglyceride form. That is simply not a realistic amendment to make. And the district court acknowledged that in light of all the studies that it looked at. Told us that here, if they made such an amendment, then we'd have to go and see if it was real. Of course, if they made such an amendment and there was no evidence, they could be sanctioned. But why shouldn't they be given a chance to make that amendment? Because, Your Honor, according to Iqbal and the Supreme Court, whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Here, judicial experience and common sense tells us that the case can end at the pleading stage. And that an amendment like that, like the theory of the case, is a fanciful one. There is no need to proceed with the case, spend the litigants' time and resources, the resources of the court, to get to a place where the litigants are just going to wind up getting sanctioned for pushing an implausible theory. Let me circle back to, again, to why it's so implausible. The statement on the label on the back explicitly says that these omega-3s are provided in ethyl ester form. The plaintiff says that doesn't matter. We can't look at the back of the label and cite cases from this circuit, the Mantikas case. It seems like the question under Mantikas is, and it gets us back to our philosophical question at some level, right? Mantikas says you can explain, you can't contradict. And so they say what's on the front of the label is that it's fish oil. What's on the back of the label tells us that it's, through esterification, no longer fish oil but something else. And that's precisely right, Your Honor. So these cases about the back of the label fall into one of two camps. Does it conflict or does it clarify? Right. And they're saying it conflicts. Okay, well, the statement on the back is as ethyl esters. The statement on the front is fish oil. On its face, those two things don't conflict. Right? If the front of the label said as triglyceride and the back said as ethyl ester, those two statements plainly conflict on their terms. So the necessary implication — If the front says fish oil and the back says derived from fish oil, do those things contradict? Derived from fish oil as opposed to fish oil? Then we would have to ask what I was about to get to. What does the reasonable consumer believe fish oil to mean when they see it on the front? And in this case, the implication of Plaintiff's argument is that when a consumer sees fish oil — It's naturally occurring. — it has to be on its triglyceride backbone. Because the only conflict then with — that's the conflict with ethyl esters. And my argument here is that that doesn't line up with any of the sources, which specifically say that most of the fish oil supplements in the market are actually in ethyl ester form. And, of course, the reasonable consumer isn't aware of these differences. Let me ask a different version of that. If the front says naturally occurring fish oil and the back says derived from fish oil, are those conflicting or clarifying? If it were to say naturally occurring and derived from fish oil, I'd have to give that some thought. I thought you were going to give me naturally occurring as — Now's the time, counsel. Now's the time. Well, so naturally occurring and from fish oil. I don't think those are necessarily conflicting because it doesn't really tell us the molecular structure. This label tells us the molecular structure. It actually says as ethyl ester. That's what provides the clarification. That's what makes the label non-deceptive. It is very clear. It's not — I would say derived from fish oil is in itself potentially vague. So you have a vague statement on the front and a vague statement on the back. The back statement in your hypo, respectfully, they're both vague, so it doesn't help to clarify. It doesn't bring us into that world of cases where the statement on the back clarifies. Here, the statement on the back is absolutely clear. It is as ethyl esters. That's what brings it into the camp of cases where the back clarifies the front. It's entirely appropriate. It's not deceptive, and we would ask the court to affirm the decision below. Thank you, counsel. Mr. Brown, you have three minutes. Thank you, Your Honor. Where to begin? Substantial transformation is not philosophical with all due respect, Your Honor. It is very real. Just like we have an apple, it's not apple cider, and it's not apple cider vinegar, and it's not an apple extract, and it's not an apple oil. And this goes throughout — you know, the whole purpose of the FDCA was to prevent consumer confusion, and the whole purpose of our various state laws to prevent deceptive conduct addresses these points. There's no ambiguity here. There's no such thing as an ethyl ester fish oil. There is fish oil or ethyl ester products. Now, ethyl ester products can be omegas. For example, an ambiguity, Your Honor. If I just said fish oil and a reasonable consumer wanted to know, I wonder what kind of fish they use. That's an ambiguity. Turn over the label under Manticus, under Gerber. Look to say, oh, this is a small, oily fish. Or, no, this is fish offal from salmon or from a big, white fish. Fine. Omega-3. Same thing. You want an ambiguity? The ambiguity is omega-3. That's it. Is it phospholipid? Is it ethyl ester? Is it a natural triglyceride? Is it a re-esterified triglyceride? Compendial sources all differentiate. Consumers are then under an obligation to look. But fish oil is a natural product. You don't have to say natural fish oil. You just have to say fish oil. And what allegations in the complaint would lead us to the plausible allegation that that's what a consumer thinks? Well, we think that's what reasonable consumers would think. And we make allegations in broad strokes. As we pointed out, Your Honor, this is a motion to dismiss. So we don't have consumer data. But I will tell you, one of the things the lower court challenged us without giving us leave to amend was, well, show me what's on the market that a consumer would care. And we even pointed out the one exhibit the defendants put in and asked judicial notice for. The nature's made ‑‑ oh, I'm sorry. If we allowed you to amend, what would you change? Well, to allow an amendment, I would certainly address the issue of more consumer information. I would put in information of competitive products. As I mentioned in court today, you just have to go into a Duane Reade or a CVS and you will see competitive products. The court pointed out, the defendants actually pointed out, for example, one of the products, one of their competitive products, nature made, which is an omega 3 from fish oil that actually discloses in a more appropriate way that it's an ethyl ester. We can also address the bioavailability issue that the lower court was concerned of and also this whole notion of mercury or heavy metals. It's a misnomer. There's nothing on the market that isn't checked for it. It's not because of this process. And we can clarify any of the things that she pointed out, too, as we put in our brief, Your Honor. And I see, again, I apologize. I'm over time. Thank you, counsel. Thank you, Your Honors. Both counsel for a helpful argument. The matter is submitted with a reserved decision.